JUDGE COFER
delivered the opinion of the court.
This was an action by the appellees on a fire-policy issued by the appellant to the female appellee, insuring against loss or damage by fire a frame house owned by her, and situated in the town of Midway, in "Woodford County.
*315 Reference was made in the policy to a written application for a policy issued by the appellant on the same property for the preceding year, and that application was made a part of this policy.
In that application the house was described as occupied, first story, as milliner’s-shop, post-office, dining-room, and bed-room; second story, as bed-rooms; and in this policy it was described as “occupied as a milliner’s-store, post-office, and by a tenant as a family-dwelling.”
It was stipulated in the policy that “if an application, survey, plan, or description of the property therein insured was referred to in the policy, such application, survey, plan, or description should be considered a part of the contract and a warranty by the assured, and that any false representation by the assured of the condition, situation, or occupancy of the property should render the policy void.”
It was also stipulated that if the interest of the assured in the property was any other than the entire, unconditional, and sole ownership thereof, for the use and benefit of the assured, it must be so expressed in the written part of the policy, otherwise the policy should be void; and that if the house should become vacant or unoccupied, and so remain for more than ten days without notice to and consent of the company in writing, the policy should be void.
The house was destroyed by fire during the continuance of the policy, and the company claimed exoneration upon the following grounds, among others not necessary to be stated:
1. That the house was not occupied, as stated in the application and policy, at the time the policy issued.
2. The property was encumbered at the time by a vendor’s lien for over $1,100 of unpaid purchase money, and therefore Mrs. Curry ivas not the entire, unconditional, and sole owner thereof for her use and benefit.
3. That the house became and was vacant for more than ten days without notice to and consent in writing by the company.
*316 The evidence conduced to establish the facts upon which each of these propositions rests.
The court instructed upon the first proposition that if, at the time the policy was issued, the house was not occupied as represented, and the difference between the actual occupation and that described in the policy increased the risk and the rate of insurance, the verdict should be for the defendant.
Upon the second proposition the court refused to instruct, and upon the third refused to instruct in substance that if any change had taken place in the occupancy of the house after the issual of the policy, and had continued for ten days without notice to the company, or if the house had been used or occupied so as to increase the risk, without the written consent of the company, the plaintiff could not recover.
The correctness of the instruction on the first proposition must depend upon the construction of the stipulation in the policy that the application should be considered a part of the policy and a warranty, and that any false representation by the assured of the condition, situation, or occupancy of the property should render the policy void.
The application described the property as occupied in part 'as a milliner’s-shop' and in part as a dining-room and bedrooms, and in the policy it was described as occupied in part as a milliner’s-shop and in part by a tenant as a residence. This description, the assured agreed, should be considered a warranty. Having 'warranted the house to be occupied as represented, if it was not so occupied the contract was violated on her part at the moment of its execution, and it never became binding upon the company.
A statement in a policy of the existing use of the premises is undoubtedly a warranty that they are so used in presentí. (Flanders on Insurance, 289, and authorities there cited:) And if this were not so, it is competent for the parties to contract that such statements shall be so considered; and in this case that was done.
*317 So, also, when the policy contains a provision that any untrue statement shall avoid it, it is vitiated by any statement false in fact, whether material or not. (Flanders on Insurance, 282.)
It is contended, however, that these rules have been changed by our statute of February 4, 1874, which provides that “ajl statements or descriptions in any application for or policies of insurance shall be deemed and held representations and not warranties; nor shall any misrepresentation, unless material or fraudulent, prevent a recovery on the policy.”
This statute would no doubt control in all cases in which the policy is silent as to the effect of such statements and descriptions, but when the parties undertake in the policy itself to declare the meaning and effect to be given to its stipulations, they have a right to do so, and there is nothing in the act supra to indicate an intention on the part of the legislature to control the action of the parties in this respect.
The doctrine on this subject is thus stated by Mr. Sedgwick, in his work on Statutory and Constitutional Law, p. 109: “The general rule is, that no contract or agreement can modify a law.” “ To this rule, however,” he says, “ there is a large class of exceptions, expressed by the maxim, modus et eonventio vincunt legem. These are cases where the party is held at liberty to waive a statutory provision which, if insisted on, would inure to his benefit; and generally it is true that where no principle of public policy is violated, parties are at liberty to forego the protection of the law.”
No principle of public policy is involved in a case like this, and when a party chooses by his or her contract to stipulate that parts of it shall have a construction and effect different from that the law would give to it but for their contrary declaration in the contract itself, it ought to be interpreted by the courts as they have contracted it shall be interpreted.
In respect to the stipulation that if the interest of the *318 assured in the property covered by the policy was other than the entire unconditional and sole ownership thereof, for her use and benefit, the policy should be void, the only question not already disposed of is, whether a vendor’s lien for a part of the purchase money brings the case within that clause of the policy. That it does was settled by this court in Security Insurance Company v. Bronger, &c. (6 Bush, 147.)
Mrs. Curry held the property in trust for her vendor until the purchase money was paid. (Story’s Equity Jurisprudence, sec. 1217; 4 Kent’s Com., sec. 58, p. 152.) Her ownership was therefore conditional, and, to the extent of the unpaid purchase money, was not for her use and benefit, but'for the use and benefit of her vendor, and her interest being untruly stated, the policy was void by its express terms.
Judgment reversed, and cause remanded for a new trial upon principles not inconsistent with this opinion.